104 F.3d 354
 78 A.F.T.R.2d 96-7251
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Plaintiff-Appellee,
v.
James M. COPPOLA, Jr., Barbara Coppola, Individually and as
Trustees of Coppola Trust, Amandy Realty Corp., Cobra
Construction, Corp., Cobra Pile Driving, Coppola
Construction, Corp., Coppola Realty Corp., James Coppola
Trucking Inc., G.I.J. Equipment, Corp., G.I.J. Realty Corp.,
J.A.J. Equipment, a/k/a J.A.J. Equipment Inc., Corp., J.J.'s
Landing Co., Inc., J.M. Coppola Corp., (New York), J.M.
Coppola Corp., (New Jersey), J.M. Coppola Trucking Inc.,
J.M. Trucking Co., Inc., JMC Carz Inc., Jiggy Construction,
Corp., Jiggy Pile Driving Corp., Mill Harbour Development
Corp., Mill Construction Corp., Mill Harbour Yacht Club &
Marina, Ltd., Apple Bank; Barclays Business Credit, Inc.,
Greenpoint Savings Bank Corp., General Motors Acceptance
Corporation, State of New York, City of New York, County of
Suffolk, Weyant Oil Services and American Piles Inc., Defendants,
 No. 96-6122.
 United States Court of Appeals, Second Circuit.
 Nov. 18, 1996.
 
 1
 APPEARING FOR APPELLANT: Michael Majewski, Mineola, NY
 
 
 2
 APPEARING FOR APPELLEE: Randolph L. Hutter, U.S. Department of Justice, Tax Division, Washington, D.C.
 
 
 3
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued.
 
 
 4
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 5
 On July 8, 1992, the government filed suit to foreclose on federal tax liens on property owned by James M. Coppola ("taxpayer") and his corporations. The complaint named as defendants the taxpayer, corporations owned by the taxpayer, and other corporations with competing security interests in the taxpayer's property, including Barclays Business Credit, Inc. ("Barclays"). On March 10, 1995, unknown to the government, Barclays assigned its security interest in one of its properties, located at 6097 Strickland Avenue in Brooklyn, New York, to 6097 Management Corporation ("6097"), the appellant.
 
 
 6
 On December 12, 1995, the government sent a letter to Barclays advising it that a trial on the foreclosure action had been scheduled for December 18, 1995. On December 14, 1995, Barclays responded to the government's letter, by facsimile transmission, informing the government for the first time that Barclays had assigned its interest in the taxpayer's property to a third party. On December 15, 1995, Barclays sent a second letter to the government indicating that it had assigned its interest in the taxpayer's property to 6097. In response, the government sent a letter to Barclays pointing out that it had not made a motion for substitution of parties under Fed.R.Civ.P. 25(c) and that the government would ask the court on December 18, 1995 for an order declaring its federal tax lien superior to Barclays' security interest. A copy of this letter was also sent to 6097 via Federal Express and received by 6097 on Saturday, December 16, 1995.
 
 
 7
 On Monday, December 18, 1995, when the case was called for trial, counsel for Barclays was not present; however, Mr. Robert Levy, president of 6097, who was present, advised the district court that 6097 was the assignee of Barclays' interest. Levy asked the district court to postpone the trial to allow 6097 to prepare to defend its interest in the taxpayer's property. Levy pointed out that he had been informed of the trial only two days earlier and had retained counsel, but asked for a delay in the trial because his attorney's father had died. The court refused to delay the proceedings and entered a default judgment declaring the federal tax lien superior to the Barclays' security interest.
 
 
 8
 On January 22, 1996, 6097 sent a letter to the district court which the court construed as a motion pursuant to Fed.R.Civ.P. 60(b) for relief from judgment and pursuant to Fed.R.Civ.P. 25(c) to be substituted as defendant. On February 9, 1996, Levy filed an affidavit which stated, inter alia, that on March 10, 1995, 6097 had given Barclays $50,000 in exchange for Barclays' interest in the taxpayer's property, valued at $2 million. Levy explained that his delay in making an appearance in the case was due to his reliance on Barclays to continue to pursue the underlying foreclosure action on its behalf. 6097 now appeals from the district court's denial of its petition for relief from judgment and motion to be substituted as defendant.
 
 
 9
 We review a district court's denial of a motion to vacate a default judgment for abuse of discretion. United States v. Bank of New York, 14 F.3d 756, 758 (2d Cir.1994). Because the trial judge is usually in the best position to assess the good faith and credibility of the parties, we "defer to the decision below unless it is clearly wrong." Davis v. Musler, 713 F.2d 907, 912 (2d Cir.1983) (internal quotations omitted). In this case, the district court was not "clearly wrong" in determining that 6097 was not entitled to relief under either Rule 60(b)(1) or Rule 60(b)(6).
 
 
 10
 Rule 60(b)(1) affords relief from a default judgment entered against a party due to its "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). In deciding whether to grant relief under Rule 60(b)(1), a court should balance several factors, including "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." Davis, 713 F.2d at 915. 6097 claims that the government would suffer no prejudice should this court vacate the default judgment because the government had previously admitted that the Barclays lien was superior to the federal tax lien. We disagree. At the very least, the government would have to incur further costs to defend the superiority of its tax lien and would have to investigate the legitimacy of the assignment between Barclays and 6097.
 
 
 11
 Even if we were to agree that the government would not be substantially prejudiced, Rule 60(b)(1) does not afford relief for deliberate, tactical decisions of a party. Nemaizer v. Baker, 793 F.2d 58, 59-60 (2d Cir.1986). "Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." Id. at 62. In this case, 6097 is largely responsible for the predicament in which it found itself on the eve of trial. Although 6097 had bought Barclays' interest in the taxpayer's property in March 1995, it deliberately chose to wait nine months before advising the government and the court of the assignment, deciding instead to rely on Barclays to pursue the foreclosure action on its behalf. 6097 has failed to show any excusable neglect, mistake, inadvertence or surprise under Rule 60(b)(1). The district court did not abuse its discretion in refusing to reopen its judgment.
 
 
 12
 6097 is also not entitled to relief from judgment under Rule 60(b)(6). Such relief is available only under extraordinary circumstances. See e.g., Klapprott v. United States, 335 U.S. 601 (1949); Paddington Partners v. Bouchard, 34 F.3d 1132 (2d Cir.1994). Because 6097's deliberate decision not to inform the government and the district court of Barclays' assignment is not the type of extraordinary circumstance contemplated by Rule 60(b)(6), relief from judgment is not warranted.
 
 
 13
 Having concluded that 6097 is not entitled to relief from judgment, we need not address its petition to be substituted as defendant in the underlying foreclosure action pursuant to Fed.R.Civ.P. 25(c).
 
 
 14
 For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.